UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL |
| | ) | Corpus Christi, Texas |
| Plaintiff, | ) | Tuesday, September 15, 2015 |
| | ) | ( 9:48 a.m. to 10:23 a.m.) |
| vs. | ) | (11:02 a.m. to 11:43 a.m.) |
| | ) | |
| JIMMY GARZA, JR., | ) | CASE NO: 2:15-CR-0691-1 |
| RAMIRO SERRATA, JR., | ) | CASE NO: 2:15-CR-0691-2 |
| | ) | |
| Defendants. | ) | |


REARRAIGNMENT


BEFORE THE HONORABLE HAYDEN HEAD,
SENIOR UNITED STATES DISTRICT JUDGE


Appearances:            See Next Page

Case Manager:           Sylvia Syler

Court Recorder:         Judith F. Alvarez

Deputy U.S. Marshal:    Emily Maddox / Eric Haag
                        Don Mihelich

Transcribed by:         Exceptional Reporting Services, Inc.
                        P.O. Box 18668
                        Corpus Christi, TX 78480-8668
                        361 949-2988

THIS TRANSCRIPT HAS BEEN FURNISHED AT PUBLIC
EXPENSE UNDER THE CRIMINAL JUSTICE ACT AND MAY
BE USED ONLY AS AUTHORIZED BY COURT ORDER.
UNAUTHORIZED REPRODUCTION WILL RESULT IN AN
ASSESSMENT AGAINST COUNSEL FOR THE COST OF AN
ORIGINAL AND ONE COPY AT THE OFFICIAL RATE.
General Order 94-15, United States District Court,
Southern District of Texas.

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES FOR:**


Plaintiff:                          RUBEN R. PEREZ, ESQ.
                                    Assistant United States Attorney
                                    1000 Louisiana, Suite 2300
                                    Houston, TX 77002

                                    JARED FISHMAN, ESQ.
                                    NICHOLAS DURHAM, ESQ.
                                    U.S. Department of Justice
                                    Civil Rights Division
                                    950 Pennsylvania Avenue, NW
                                    Washington, DC 20530

Jimmy Garza:                        FRED JIMENEZ, ESQ.
                                    Attorney at Law
                                    509 Lawrence #301
                                    Corpus Christi, TX 78401

Ramiro Serrata, Jr.:                SAM R. FUGATE, ESQ.
                                    Fugate Law Office
                                    201 E. Henrietta
                                    Kingsville, TX 78364

U.S. Probation Office:              Joe Jasek
                                    Noelia Guevara
                                    Rene Garcia
                                    1133 N. Shoreline, Room 124
                                    Corpus Christi, TX 78401

1    <u>**Corpus Christi, Texas; Tuesday, September 15, 2015; 9:48 a.m.**</u>

2                    **(Call to Order)**

3            **THE COURT:**  Well, let's proceed with Garza-Serrata.

4            **THE CLERK:**  Yes, sir.  C15-691, *United States of*

5    *America versus Jimmy Garza and Ramiro Serrata.*

6            **MR. FISHMAN:**  Good morning, your Honor, Jared Fishman

7    for the United States, also with Ruben Perez and Nicholas

8    Durham.

9            **THE COURT:**  Good morning.

10           **MR. JIMENEZ:**  Fred Jimenez for Mr. Garza.

11           **MR. FUGATE:**  Sam Fugate for Mr. Serrata.

12           **THE COURT:**  Well, I wanted to have this hearing this

13   morning to find out where we were.  So why doesn't the

14   Government tell me?  Who wants to speak for the Government?

15           **MR. FISHMAN:**  I will --

16           **THE CLERK:**  The Defendants are not here.

17           **THE COURT:**  Please be seated.

18           Where are the Defendants?  Sylvia?

19           **THE CLERK:**  They're coming, your Honor.

20           **THE COURT:**  Well, we did call the case.

21           **THE CLERK:**  Yes, your Honor.  Well, we just called

22   the case, your Honor.

23           **THE COURT:**  Uh-huh.

24           Why don't you take your seat over there by the table

25   until we find out where we are?  Go to the table, please, sir.

1          You're Mr. Durham?

2          **MR. FISHMAN:**  Fishman, your Honor.

3          **THE COURT:**  Fishman.

4          All right, sir.  Where are we in the case?

5          **MR. FISHMAN:**  Your Honor, we've reached a plea

6  agreement with Mr. Serrata.  We're still in discussions with

7  Mr. Garza though we do believe that case will also be resolved

8  with a plea.

9          **THE COURT:**  Mr. Jimenez, what's up?

10         **MR. JIMENEZ:**  Mr. Garza -- Judge, simply I just

11  haven't enough time to complete discovery on the case but we

12  are headed to a plea.  My understanding is the same offer that

13  was relayed to Mr. Serrata is being relayed to Mr. Garza.  I'd

14  ask the Court possibly until Monday.  Certainly I should have

15  everything done by then.

16         **THE COURT:**  Doesn't that require the attorneys to

17  come back down here?

18         **MR. JIMENEZ:**  It does and I thought the -- it does,

19  Judge, and I maybe can do it this week but my understanding is

20  that they wanted to leave today anyway.

21         **THE COURT:**  I'm sorry?

22         **MR. JIMENEZ:**  That they wanted to leave today anyway.

23         **THE COURT:**  Well, it can't be Monday and I have jury

24  duty Tuesday.

25         Isn't that what I told you, Sylvia, that it's

1  Tuesday?

2          **THE CLERK:**  No, your Honor.  Yes, your Honor.

3          **THE COURT:**  I did tell you.  What day did I tell you?

4  I know I told you.

5      **(Court conferred with clerk)**

6          **THE COURT:**  Why don't you gentlemen be seated just a

7  minute?

8          Where -- what is the plea to be in the -- is the

9  Garcia case?

10          **MR. FISHMAN:**  Yes, your Honor.  The Government would

11  -- I'm sorry.  The Defendant Mr. Serrata would plead to an --

12          **THE COURT:**  Serrata.

13          **MR. FISHMAN:**  -- information that charges a

14  conspiracy count as well as one count of 249 to commit a crime

15  based on sexual orientation and the indictment would be

16  dismissed at the time of sentencing.

17          **THE COURT:**  Has it been -- has the plea agreement

18  been reduced to writing?

19          **MR. FISHMAN:**  Yes, your Honor.

20          **THE COURT:**  Have these two Defendants been convicted

21  of this crime in State court?

22          **MR. FISHMAN:**  No, your Honor.

23          **THE COURT:**  Have they ever been charged in State

24  court?

25          **MR. FISHMAN:**  No, your Honor.

1      **THE COURT:**  Have a seat.  Let me just look at this

2  indictment real quick.

3      **(Pause)**

4      **THE COURT:**  It was Count Three?

5      **MR. FISHMAN:**  I'm sorry, your Honor?

6      **THE COURT:**  Was it Count One and Three?

7      **MR. FISHMAN:**  Well, it'd be One and Three, however,

8  and charged in the indictment, Count Three has two

9  enhancements.  So the Government will be dismissing the

10  enhancing factors of Count Three.  Our proposition was to do it

11  as an information.  However, if the Court has a different way

12  that they would -- that the Court would like us to proceed,

13  we're willing to do that as well.

14      **THE COURT:**  Is there any problem with just arraigning

15  him without the enhancing language?

16      **MR. FISHMAN:**  I don't believe so, your Honor.  I

17  typically handle it through an information.  However, I don't

18  believe that would be a problem to do it that way.

19      **THE COURT:**  Well, why would we need to have him

20  basically plead to an information just to reduce -- to take out

21  some enhancements.  Aren't the elements the same --

22      **MR. FISHMAN:**  The elements of the defense are the

23  same, yes, your Honor.

24      **THE COURT:**  -- except for the enhancements which

25  you'd have to prove for sentencing purposes.

1          **MR. FISHMAN:**  Well, it changes the maximum sentence

2    available to the Defendant.

3          **THE COURT:**  Right.  So it's in his favor.

4          **MR. FISHMAN:**  Yes, your Honor.

5          **THE COURT:**  Let's talk jurisdiction.

6          **MR. FISHMAN:**  Yes, your Honor.

7          **THE COURT:**  What is the jurisdictional basis for

8    Count Two?

9          **MR. FISHMAN:**  Count Two --

10          **THE COURT:**  Excuse me -- for Count Three.

11          **MR. FISHMAN:**  For Count Three, it's interstate

12    commerce, your Honor.

13          **THE COURT:**  Where is the interstate commerce here?

14          **MR. FISHMAN:**  In this particular case, the Defendants

15    used weapons that traveled in interstate commerce which are

16    covered by the statute under 249(a)(2).

17          **THE COURT:**  So you don't intend to offer proof with

18    respect to the other recited elements or other recited

19    jurisdictional hooks?

20          **MR. FISHMAN:**  Well, if this case were to proceed to

21    trial, yes, your Honor --

22          **THE COURT:**  But today?

23          **MR. FISHMAN:**  Today, your Honor, the parties -- the

24    Defendant would acknowledge that the weapon that he used

25    traveled in interstate commerce.

1          **THE COURT:**  Which was?

2          **MR. FISHMAN:**  Which was both a broom as well as there

3    was a handgun involved in this case.

4          **THE COURT:**  How did the broom travel in interstate

5    commerce?

6          **MR. FISHMAN:**  The broom was manufactured in Mexico

7    and then brought into Texas to be sold at the Family Dollar

8    store here in Corpus Christi.

9        **(Pause)**

10         **THE COURT:**  You can be seated, thank you.

11         **MR. FISHMAN:**  Thank you, your Honor.

12         **THE COURT:**  Why don't we just stay a little relaxed

13   and if I ask you some questions, just remain seated?

14         **MR. FISHMAN:**  Thank you, your Honor.

15       **(Pause)**

16         **THE COURT:**  It's an awkwardly written statute.

17         **MR. FISHMAN:**  Yes, your Honor.

18         **THE COURT:**  The "or" is in wrong place. The "or,

19   o-r," is in wrong place.  It reads, "Whoever whether or not

20             acting under color of law willfully causes bodily

21             injury to any person or through the use of fire,

22             firearm or dangerous weapon attempts to cause bodily

23             injury because of perceived race or color shall be

24             imprisoned not more than ten years."  That reads that

25   -- literally reads to my mind and sight that the use of -- that

1    the words "Through the use of fire, firearm, dangerous weapon,

2    incendiary device" applies to attempts to cause bodily injury.

3           What it should read is -- and I think it does --

4    Congress meant it to read, "Whoever, whether or not acting

5           under color of law, through the use of fire, firearm,

6           or firearm willfully causes bodily injury or attempts

7           to cause bodily injury."  The "or" has a comma after

8    it and refers to the prepositional clause, "Through the use of

9    fire," attempts to enter.

10          Or you could say it another way, "Willfully causes

11   bodily injury to any person through the use of fire, firearm,

12   et cetera or attempts to cause bodily injury."

13          **MR. FISHMAN:**  Yes, your Honor.

14          **THE COURT:**  The --

15          **MR. FISHMAN:**  My understanding of the statute is that

16   the three ways laid out call for attempt of crimes that do not

17   involve the bodily injury.  So in our particular case, it's

18   charged as willfully causing bodily injury because of the

19   actual or perceived --

20          **THE COURT:**  Okay.

21          **MR. FISHMAN:**  -- sexual orientation or race.

22          **THE COURT:**  But where is the fire, firearm, dangerous

23   weapon go?

24          **MR. FISHMAN:**  Well, that component would be in an

25   attempt crime.

1    **THE COURT:** Not the -- I don't think that's right. I

2  mean, that -- doesn't it mean that whoever causes bodily injury

3  to person through fire, firearm, dangerous weapon or incendiary

4  device or attempts to cause that has committed the crime

5  because of perceived race? Are you telling me that fire,

6  firearm, dangerous weapon, incendiary device only apply to

7  attempt?

8    **MR. FISHMAN:** I believe they only apply to attempt

9  but there's none -- they're applicable that one can commit a

10 bodily injury using firearms -- firearms, incendiary devices or

11 dangerous weapons. However, one can't attempt to commit a hate

12 crime that's actionable without one of those items.

13   **THE COURT:** So you can commit the hate crime by only

14 causing bodily injury --

15   **MR. FISHMAN:** Yes, your Honor.

16   **THE COURT:** -- without regard to the fire or without

17 regard to firearm or dangerous weapon or incendiary device?

18   **MR. FISHMAN:** Yes, your Honor. I think the best

19 example would be if --

20   **THE COURT:** Well, why would anybody write a statute

21 like that?

22   **MR. FISHMAN:** I can't say, your Honor. I think it

23 was to broaden the type of conduct that was conduct -- that was

24 criminalized with respect to attempt. So, for example, if a

25 person were to punch someone because of their race or one of

1 the other protective classes, that would covered under the

2 statute because bodily injury was caused assuming that the

3 punch led to bodily injury.

4       **THE COURT:** But you can only attempt to do that if

5 you are using fire or firearm. You can't swing and miss?

6       **MR. FISHMAN:** Correct, your Honor.

7       **THE COURT:** You can't swing and miss and that's

8 not --

9       **MR. FISHMAN:** That appears to be the way the statute

10 -- because there's no creation of bodily injury. However, if

11 one had a handgun and pointed it at your head and didn't

12 discharge or use it as a weapon apart from to cause that fear,

13 that --

14       **THE COURT:** So you can attempt to cause by -- you

15 can't attempt the crime by raising a stick above your head?

16       **MR. FISHMAN:** That's my understanding of the statute,

17 your Honor.

18       **THE COURT:** Or by getting out a rope? Putting

19 somebody up to hang with a rope and scaring the heck out of him

20 is not enough?

21       **MR. FISHMAN:** Well, if there was some degree of

22 bodily injury and bodily injury --

23       **THE COURT:** Well, I mean, you just --

24       **MR. FISHMAN:** -- would encompass pain --

25       **THE COURT:** No pain. No pain, just a very compliant

1   person.  Get up on the back of that truck, Buddy, we're going

2   to hang you.  And about that time, the Sheriff arrives and

3   says, "Break it up, fellows."  Why would anybody create a

4   statue like that?

5           MR. FISHMAN:  My understanding of the statutory

6   intent was to limit the scope of the statute.

7           THE COURT:  Of the attempt?

8           MR. FISHMAN:  Of the --

9           THE COURT:  Or does it limit the scope of the

10  "Willfully causes bodily injury"?

11          MR. FISHMAN:  Does which part, use of the firearm --

12          THE COURT:  The language "Through the use of fire,

13  firearm, explosive device" -- is that only -- does that limit

14  willfully causes bodily injury?

15          MR. FISHMAN:  No, your Honor.

16          THE COURT:  No, I agree that it shouldn't and we have

17  a case in Texas, I think, that -- in which a fellow was beaten

18  up.

19          MR. FISHMAN:  Yes, your Honor, the *Cannon* case.

20          THE COURT:  Right.  And there was no requirement of

21  weapons or devices.

22          MR. FISHMAN:  Correct.  They just beat that

23  gentleman.

24          THE COURT:  But you can attempt to cause somebody

25  bodily injury and not be a violation of the statute even with

1    evil motive as set forth there in the statute as long as you

2    don't use a fire or firearm or a dangerous weapon or an

3    explosive device.

4         **MR. FISHMAN:**  I believe that's correct, your Honor.

5         **THE COURT:**  So you can use a bat.

6         **MR. FISHMAN:**  Well, I think a bat would be a

7    dangerous weapon.  I think in your earlier example, a rope

8    would be a dangerous weapon, any weapon that has the potential

9    to cause serious bodily injury or harm.  The fact that in your

10   scenario, the victim did not get injured, I don't believe that

11   would make it less of a crime in that scenario since there was

12   a dangerous weapon used.

13        **THE COURT:**  You just can't use a fist?  Is a fist a

14   dangerous weapon?  I think we have cases in Texas that says it

15   is.  How about a beer can?

16        **MR. FISHMAN:**  I think a beer can can be a dangerous

17   weapon depending on the manner that it was used.  The case law,

18   as your Honor is well aware, is rather broad on what can be a

19   dangerous weapon, depending on the manner that it's used.

20        **THE COURT:**  Well, can you tell me any reason why it

21   should be there?

22        **MR. FISHMAN:**  Why what should be there?

23        **THE COURT:**  Why this language should be there.

24        **MR. FISHMAN:**  My only understanding is that Congress

25   was attempting to narrow the number of crimes that would be

1   covered by this particular --

2          **THE COURT:**  Well, then why wouldn't that apply as

3   well to the first clause?  That's why I'm saying this doesn't

4   make sense.  It doesn't make sense that you could commit the

5   crime one way and attempt to attempt to commit the crime a

6   different way and have the same punishments.  Right?  Wrong?

7          **MR. FISHMAN:**  The attempt -- well, the attempt would

8   only be covered --

9          **THE COURT:**  That doesn't matter for purposes of this

10  case because we're not talking attempt.

11         **MR. FISHMAN:**  Right.

12         **THE COURT:**  We're talking about a completed act.

13         **MR. FISHMAN:**  That caused bodily injury.  It happened

14  to also have involved dangerous weapons but the dangerous

15  weapon is relevant only for the jurisdictional hook for the

16  sexual orientation component.

17         **THE COURT:**  So are there different intents?  What

18  does "willfully" mean in this statute?  Not the conspiracy

19  statute but in the substantive statute.

20         **MR. FISHMAN:**  I don't believe that has been defined

21  any differently than "willfully" has traditionally been used in

22  "knowingly and intentionally" with respect to the intent to

23  create the harm -- sorry, with the intent to cause the bodily

24  injury -- to knowingly and intentionally cause that harm to the

25  victim.

1        **THE COURT:**  What does "willfully" mean in the

2   conspiracy statute?

3        **MR. FISHMAN:**  That they knew of the purpose of the

4   conspiracy and committed overt acts with the intention to

5   complete that conspiracy.

6        **THE COURT:**  You think that's all it means?  It

7   doesn't mean with evil purpose to disobey or disregard the law?

8        **MR. FISHMAN:**  Well, they have to know that the

9   purpose of the agreement is to violate the law, I guess, your

10  Honor.

11       **THE COURT:**  Does that mean they have to know what the

12  law is?

13       **MR. FISHMAN:**  No, I don't believe so, so long as you

14  intend to create the harm that that law is intended to prevent

15  against.

16       **THE COURT:**  Do you know why this case was not

17  prosecuted in State court?

18       **MR. FISHMAN:**  I can't speak, your Honor, as to why

19  the Corpus Christi Police closed their investigation.  They had

20  an investigation the night that the incident started and they

21  closed their investigation.  My understanding based on the

22  paperwork provided us to -- by Corpus Christi, the victim was

23  -- they believed the victim was no longer with their

24  investigation.

25       **THE COURT:**  Has he cooperated with you?

1          MR. FISHMAN:  Fully, your Honor.

2          THE COURT:  And is the victim aware of today's

3  hearing?

4          MR. FISHMAN:  Yes, your Honor.

5          THE COURT:  How do you know that?

6          MR. FISHMAN:  We called him.

7          THE COURT:  You did?

8          MR. FISHMAN:  Yes, your Honor.

9          THE COURT:  And did you talk to him about the

10  proposed agreement?

11          MR. FISHMAN:  Yes, your Honor.

12          THE COURT:  And was he satisfied with that?

13          MR. FISHMAN:  Yes, your Honor.

14          THE COURT:  Is he here today?

15          MR. FISHMAN:  No, he is not.

16          THE COURT:  Did you tell him he could be here?

17          MR. FISHMAN:  Your Honor, we -- as to the status

18  hearing, no, we did not, your Honor.  As to the potential

19  change of plea, that happened late last night and so we

20  contacted him to let him know but we were unable to reach him.

21  We have discussed his rights under The Victim of Crimes

22  Prevention Act and I --

23          THE COURT:  He does -- he has a right to be here.

24          MR. FISHMAN:  Yes, your Honor.

25          THE COURT:  Does he know he has a right to be here?

1          **MR. FISHMAN:**  Does he know he has a right to be at

2   any plea hearing or any status hearing?

3          **THE COURT:**  Any plea hearing.

4          **MR. FISHMAN:**  Yes, your Honor, he does know that.

5          **THE COURT:**  He just doesn't know today is a plea

6   hearing?

7          **MR. FISHMAN:**  Yes, your Honor.

8          **THE COURT:**  He thought today was just going to be a

9   status hearing?

10          **MR. FISHMAN:**  Yes, your Honor --

11          **THE COURT:**  So he --

12          **MR. FISHMAN:**  -- because it was so late last night

13  that I was -- we believed that only to be a status hearing.

14          **THE COURT:**  He didn't know that there was going to be

15  the reduction of the charge?

16          **MR. FISHMAN:**  We've discussed what the charges --

17  what our proposed plea offer to both Defendants was with the

18  victim prior to yesterday.  I believe it was two weeks ago.

19          **THE COURT:**  Why can't you get in touch with him?  Do

20  you know?

21          **MR. FISHMAN:**  We have one phone number for him.  We

22  called that number and it went straight to voice mail.  I can

23  check my phone to see if he's returned the phone call but as of

24  the time we entered this court, I had not heard back from him.

25          **THE COURT:**  I would feel more comfortable if he knew

1   exactly what was occurring.

2           **MR. FISHMAN:**  Yes, your Honor.

3           **THE COURT:**  Why don't you -- have you had trouble

4   getting in contact with him before?

5           **MR. FISHMAN:**  Yes, your Honor.  We ultimately always

6   get in contact with him but he hasn't had his own cell phone.

7   So we've had to go through a number of routes to get in contact

8   with him.

9           **THE COURT:**  Is the number you're calling his cell

10  phone?

11          **MR. FISHMAN:**  I believe it's a cell phone that is

12  either associated with a friend of his or with his company.

13  The voice mail is his company's voice -- it says the company

14  name.

15          **THE COURT:**  Do the Defendants know what that company

16  name is?

17          **MR. FISHMAN:**  No.

18          **THE COURT:**  Is that for his security?

19          **MR. FISHMAN:**  Yes, your Honor.

20          **THE COURT:**  Are you concerned about the Defendant's

21  security at this time?

22          **MR. FISHMAN:**  The victim's?

23          **THE COURT:**  I mean, the victim's security at this

24  time.

25          **MR. FISHMAN:**  No, your Honor.

1          **THE COURT:**  Is that because they're in custody?

2          **MR. FISHMAN:**  Yes.

3          **THE COURT:**  Did I read that there was concern for the

4  victim's safety because of threats from persons associated with

5  the Defendants?

6          **MR. FISHMAN:**  In terms of direct threats towards the

7  victim?  No, the victim has expressed his concerns for his own

8  safety as a result of what happened to him and the fact that

9  this case has continued to be pending but in terms of any

10  direct threats, we have no evidence of any direct threats

11  either by the Defendants or by any of their associates towards

12  the victim.  I think it's more a generalized fear given the

13  nature of this case.

14          **THE COURT:**  What discovery haven't you seen,

15  Mr. Jimenez?

16          **MR. JIMENEZ:**  There's four boxes, Judge, and this

17  case has moved rather quickly and I have not seen it all.

18          **THE COURT:**  How much have you -- how much is there

19  that you haven't seen?

20          **MR. JIMENEZ:**  I've listened to several recordings and

21  one CD of discovery.

22          **THE COURT:**  So that's what percentage?

23          **MR. JIMENEZ:**  Probably 50 percent.

24          **THE COURT:**  How long did that take you?

25          **MR. JIMENEZ:**  Two days.

1          **THE COURT:**  When is the trial set?

2          **MR. FISHMAN:**  Trial is currently set for September

3     29th.

4          **THE COURT:**  Do you want to proceed with a plea this

5     morning, Mr. Fugate?

6          **MR. FUGATE:**  I do, your Honor.

7          **THE COURT:**  Is that what you want to do?

8          **MR. FUGATE:**  We've had -- although it's been a quick

9     setting, we've -- I've worked real diligent and real hard on

10    getting through all the discovery and Mr. Jimenez is right.

11    It's quite extensive but we're -- I feel comfortable that we

12    understand the case.  We understand the law and we've worked

13    out an agreement with the Government that we'd ask the Court to

14    consider.  So we're ready.

15         **THE COURT:**  Okay.

16         **MR. FUGATE:**  And also, Judge, I took into

17    consideration -- and I know it doesn't really have a whole lot

18    to do with it because my client's rights are more important but

19    I know these gentlemen have to travel a long ways and I thought

20    we were ready to take care of this case.

21         **THE COURT:**  Has the other gentleman showed up yet?

22         **THE CLERK:**  Yes, your Honor.  He's here.

23         **MR. SPEAKER:**  He's here.

24         **THE COURT:**  Is that for what purpose?

25         **THE CLERK:**  For re-arraignment, your Honor.

1          **THE COURT:**  I'm going to call a recess in the case

2    we're hearing at this time.  In the meantime -- during that

3    recess, I'm going to take a plea in another case.  That will

4    give Government's counsel an opportunity to contact the victim

5    and to resolve any other matters that need to be resolved

6    before I take -- proceed to take the plea from the Defendant.

7    Is it Serrata?  Is your client Serrata?

8          **MR. FUGATE:**  That's correct, your Honor.

9          **THE COURT:**  Thank you.

10          **MR. FUGATE:**  Thank you, Judge.

11          **MR. FISHMAN:**  And, your Honor, is it your preference

12    for us not to have the Defendant plead to an information but

13    rather amend the indictment, whether that be done orally or in

14    writing?

15          **THE COURT:**  Just orally.

16          **MR. FISHMAN:**  Orally amend --

17          **THE COURT:**  Just -- yeah --

18          **MR. FISHMAN:**  -- the indictment to remove --

19          **THE COURT:**  -- and we'll make a note on the record

20    that he didn't -- he is not admitting to that element and that

21    element or those enhancements are not being offered to the

22    Court as part of the conviction.

23          **MR. FISHMAN:**  And so given that there's still a

24    second Defendant charged with those enhancements, it would be

25    only to Mr. Serrata?

1      **THE COURT:** Exactly.  Exactly.

2      **MR. FISHMAN:** Okay, your Honor.  We'll need to make

3  some adjustments to the plea paperwork to reflect that.

4      **THE COURT:** Okay.  I don't want to go through an

5  information and I don't -- that's what Grand Juries are for.

6      **MR. FISHMAN:** Whatever suits the Court, we're happy

7  to do whatever the Court's preference is.

8      **THE COURT:** Did you have something, sir?

9      **MR. PEREZ:** Yes, your Honor.  In order for us to

10  proceed with the indictment, we just need to change the plea

11  papers.

12      **THE COURT:** Right.

13      **MR. PEREZ:** May we be excused to go to the U.S.

14  Attorney's office and do that, your Honor?

15      **THE COURT:** Yes, you may.  Yes.

16      **MR. PEREZ:** How much time do we have, your Honor?

17      **THE COURT:** How much time do you need?  I mean, just

18  do it whenever you need to do it.

19      **MR. PEREZ:** Thirty minutes, your Honor?

20      **THE COURT:** Fine.  We'll do it at 11:00 o'clock?

21      **MR. PEREZ:** Okay.

22      **THE COURT:** Does that suit your schedule?

23      **MR. FUGATE:** That's fine, Judge.  I just have to be

24  finished by noon.

25      **THE COURT:** Where have you got to be?

1          **MR. FUGATE:**  I have -- we have some mayor duties this

2   afternoon.  We're selecting a new city manager and we start the

3   interviews at 1:15.

4          **THE COURT:**  We can get it done.

5          **MR. FUGATE:**  Thank you, Judge.

6          **MR. FISHMAN:**  Thank you.

7          **MR. PEREZ:**  Your Honor, if we're a few minutes, you

8   won't hold that against us, your Honor?  We try like heck to be

9   here on time.

10          **THE COURT:**  Don't worry about it if you're late.  I'm

11   not going to do anything about it, you know.  I'm just going to

12   deal with the schedule as it is.  I'm not going to fuss at

13   anybody, if that's what you're worried about.

14          **MR. PEREZ:**  Thank you, your Honor.  And, Judge, may I

15   have five minutes with my client?

16          **THE COURT:**  Yes.

17      **(A recess was taken from 10:23 a.m. to 11:02 a.m.)**

18          **THE COURT:**  Are these Defendants separated?

19          **MR. JIMENEZ:**  They are, your Honor.

20          **THE COURT:**  Unless there's some reason, we might as

21   well have both Defendants in here.

22          All right.  What is your name, please?

23          **THE DEFENDANT:**  Ramiro Serrata, Jr.

24          **THE CLERK:**  He hasn't been sworn, your Honor.

25          Would you raise your right hand to be sworn?

1      **(Defendant sworn)**

2              **THE CLERK:**  Thank you.

3              **THE COURT:**  Mr. Serrata, I'm told you intend to plead

4   guilty to Count One and to Count Three; is that correct?

5              **THE DEFENDANT:**  Yes, sir.

6              **THE COURT:**  How old are you?

7              **THE DEFENDANT:**  Twenty-two years old.

8              **THE COURT:**  Where were you born?

9              **THE DEFENDANT:**  Corpus Christi, Texas.

10             **THE COURT:**  Where do you live?

11             **THE DEFENDANT:**  I live in Robstown, Texas.

12             **THE COURT:**  Did you go to school?

13             **THE DEFENDANT:**  Yes, sir.

14             **THE COURT:**  For how many years?

15             **THE DEFENDANT:**  Tenth grade -- I didn't complete the

16  tenth grade.

17             **THE COURT:**  Do you read and write English?

18             **THE DEFENDANT:**  Yes, sir.

19             **THE COURT:**  Do you speak English?

20             **THE DEFENDANT:**  Yes, sir.

21             **THE COURT:**  Are you in good health?

22             **THE DEFENDANT:**  Yes, sir.

23             **THE COURT:**  What is your job?

24             **THE DEFENDANT:**  I was working for TDX Associates

25  doing firing, sandblasting and painting.

1      **THE COURT:**  Have you ever been treated by a doctor

2  for treatment of a mental disease or mental disorder?

3      **THE DEFENDANT:**  No, sir.

4      **THE COURT:**  Have you taken any narcotic drugs or

5  medicines or pills or drunk any alcoholic beverages in the past

6  24 hours?

7      **THE DEFENDANT:**  No, sir.

8      **THE COURT:**  Counsel, is your client competent?

9      **MR. FUGATE:**  He's competent to stand trial, your

10  Honor.

11      **THE COURT:**  I find him to be so.

12      Are you represented by an attorney, Mr. Serrata?

13      **THE DEFENDANT:**  Yes, sir.

14      **THE COURT:**  And who is that?

15      **THE DEFENDANT:**  Sam Fugate.

16      **THE COURT:**  Did you hire him or did the Court appoint

17  him?

18      **THE DEFENDANT:**  Court-appointed.

19      **THE COURT:**  Have you had enough time to discuss your

20  case with him?

21      **THE DEFENDANT:**  Yes, sir.

22      **THE COURT:**  Are you satisfied with his services?

23      **THE DEFENDANT:**  Yes, sir.

24      **THE COURT:**  Has he been a good attorney for you?

25      **THE DEFENDANT:**  Yes, sir.

1    THE COURT:  Is he following your instructions?

2    THE DEFENDANT:  Yes, sir.

3    THE COURT:  Do you need any more time with him before

4  we proceed to take your plea today?

5    THE DEFENDANT:  No, sir.

6    THE COURT:  Do you understand he's been appointed to

7  represent you at every stage of these proceedings including a

8  jury trial if you would like?

9    THE DEFENDANT:  Yes, sir.

10    THE COURT:  Have you received a copy of the

11  indictment?

12    THE DEFENDANT:  Yes, sir.

13    THE COURT:  And have you read it and discussed it

14  with your attorney?

15    THE DEFENDANT:  Yes, sir.

16    THE COURT:  Do you understand it?

17    THE DEFENDANT:  Yes, sir.

18    THE COURT:  Under the Constitution and laws of the

19  United States, you're entitled to enter a plea of not guilty to

20  Indictment Number 691 and to require the United States to

21  establish your guilt to a jury and prove to a jury beyond a

22  reasonable doubt by its own evidence that you are guilty.  You

23  do not have to prove that you are innocent.  You would be

24  presumed innocent and it would be the obligation of the

25  Government to prove to the jury beyond a reasonable doubt that

1   you're guilty.  Your attorney would be present with you

2   throughout the entire trial to provide required legal services.

3   Do you understand?

4           **THE DEFENDANT:**  Yes, sir.

5           **THE COURT:**  To prove that you are guilty, it would be

6   the obligation of the Government to present its witnesses in

7   open court before the jury, before you, before your attorney

8   and before me.  You would have the right to see and to hear

9   them testify, the right to question and cross examine them, the

10  right to object to evidence offered by the Government.  You

11  would have the right to offer your own witnesses and evidence

12  to the jury.  Just like the Government can present a case to

13  the jury by presenting evidence, you may do the same.

14          You may call witnesses and present evidence.  You

15  yourself may be a witness if you choose to be so.  You can

16  testify if you'd like to do so to the jury and speak to them

17  about your case but you're not required to do so.  You have the

18  right to remain silent.  Do you understand?

19          **THE DEFENDANT:**  Yes, sir.

20          **THE COURT:**  No one can make you testify or speak to

21  the jury.

22          If you plead guilty, as I'm told you intend to do,

23  there will be no trial.  I will find you guilty because you

24  entered your plea of guilty.  You'll be giving up your right to

25  silence because you have declared your guilt in open court and

1   because I'll ask you questions to understand the case.  Do you

2   understand?

3            **THE DEFENDANT:**  Yes, sir.

4            **THE COURT:**  Do you want to have a trial by jury or do

5   you want to plead guilty?

6            **THE DEFENDANT:**  I plead guilty, sir.

7            **THE COURT:**  And are you willing to give up your right

8   of silence and answer questions to me about the case?

9            **THE DEFENDANT:**  Yes, sir.

10           **THE COURT:**  Okay.  Let's make sure you understand

11  that.  I am going to ask you questions about what happened.  As

12  a matter of fact, the Government's counsel is going to tell me

13  what it thinks it could prove and then I'm going to turn to you

14  and I'm going to say, "Is that what happened?"

15           **THE DEFENDANT:**  Okay.

16           **THE COURT:**  And if -- I don't know what you're going

17  to say.  You may agree or disagree but then I will ask you

18  questions about what you did and you will need to answer my

19  questions and you'll be under oath and your words will be taken

20  down on the record of this proceeding and you're present with

21  your attorney in open court.  If you don't tell me the truth,

22  you can be prosecuted for perjury.

23           So when I ask you these questions and you answer

24  them, you'll be giving up your right to silence.  And also when

25  you declare your guilt in open court by saying at the

1  appropriate time, "guilty," then you're giving up your right to

2  silence.

3          So are you willing to give up your right to silence

4  as I've described it to you?

5          **THE DEFENDANT:**  Yes, sir.

6          **THE COURT:**  I find the Defendant understands the

7  rights available to him and that he's waived the right to trial

8  and right to silence.  I find the Defendant understands the

9  right to counsel and he's satisfied with counsel.

10          Have you discussed with your attorney the charges in

11  the indictment to which you're pleading guilty?

12          **THE DEFENDANT:**  Yes, sir.

13          **THE COURT:**  Do you understand the charges?

14          **THE DEFENDANT:**  Yes, sir.

15          **THE COURT:**  Well, they're a little bit complicated.

16  So why don't we talk about them?

17          In the first count of the indictment to which you

18  intend to plead guilty, you're pleading guilty to a crime of

19  conspiracy in violation of Title 18, Section 371 of the United

20  States Code.  Now, that statute makes it unlawful for two or

21  more persons to agree together and make an agreement to violate

22  the law of the United States and in the course of that

23  conspiracy commit an act intended to bring out and bring about

24  the purpose of the conspiracy.

25          Here, the purpose of the conspiracy is alleged to be

1  two other statutes.  The first purpose of the conspiracy is to

2  cause bodily injury to another person because of that person's

3  perceived race, color or religion.  The second purpose is to do

4  the same because of that person's perceived sexual orientation.

5  Do you understand that?

6          **THE DEFENDANT:**  Yes, sir.

7          **THE COURT:**  Do you think that's what you did?

8          **THE DEFENDANT:**  Yes, sir.

9          **THE COURT:**  So the Government would have to prove

10  that there was an agreement between two or more persons, you

11  being on one of them and that agreement was voluntarily and

12  knowingly entered, that is, you knew about the agreement, you

13  decided you wanted to join it and you did join it.  And that

14  agreement here was that you would willfully cause injury to

15  another person, bodily injury, hurt to them, physical hurt to

16  them in the first instance because of their race and in the

17  second instance, because of their sexual orientation.  Do you

18  understand?

19          **THE DEFENDANT:**  Yes, sir.

20          **THE COURT:**  Specifically, black and gay.  Do you

21  understand that?

22          **THE DEFENDANT:**  Yes, sir.

23          **THE COURT:**  The overt acts are listed here on the

24  second page of the indictment and the Government would have to

25  prove one of those acts was undertaken by a member of the

1  conspiracy with the intention that the conspiracy be achieved.

2  The Government would have to prove that by entering the

3  conspiracy, you intended to violate the law of the United

4  States in knowing and intentional disregard of it with evil

5  purpose, bad purpose to disobey and disregard the law.  Do you

6  understand?

7          **THE DEFENDANT:**  Yes, sir.

8          **THE COURT:**  Now, Count Three is one of the objects of

9  the conspiracy.  It's known as the "substantive count."  You're

10  not pleading guilty to Count Two but it would be other

11  substantive count.  You are admitting to an agreement to commit

12  Count Two but in Count Three to which you're entering your plea

13  of guilty, you are pleading guilty to a charge that you

14  actually did with the aid and assistance of Garza -- by him and

15  your aid and assistance to him that you actually did injure a

16  person by the name of K.G and that you did so intentionally and

17  willfully with the intent to bring about harm with bad purpose

18  to disregard and disobey the law, that is to say, you willfully

19  injured him.  It wasn't something that just happened by

20  accident or negligence, that is, you undertake in your own mind

21  and intention to harm him because of his gender or his sexual

22  orientation.

23          The Government would have to prove that you assaulted

24  him to cause the bodily injury and that you did so with a

25  weapon that had traveled in interstate or foreign commerce.

1  Now, I understand that that's supposed to be a broom and the

2  Government would have to prove that's a broom, had traveled in

3  interstate or foreign commerce and the same thing is true with

4  the weapon, the pistol.  I understand that the Government told

5  me earlier that there was a pistol that was involved.  I don't

6  know anything about it but the Government would have to prove

7  that that pistol moved in interstate commerce at some time

8  before you possessed it or even that you took it in interstate

9  commerce.

10         But the Government would have to prove that that

11  weapon played a part in a role in the assault.  Do you

12  understand that?

13         **THE DEFENDANT:**  Yes, sir.

14         **THE COURT:**  Do you believe that you did that?  If I

15  haven't described it -- if what I'm saying to you doesn't ring

16  true and if you're saying to yourself, hey, I didn't do that --

17         **MR. FUGATE:**  There's some confusion because the

18  pistol was on the Co-defendant and he aided and abetted him.

19  So that's --

20         **THE COURT:**  Okay.  So the question is -- remember I

21  told you that the Government can prove this case by your aiding

22  and abetting, by you're giving assistance to and helping the

23  other Co-Defendant commit this crime.

24         **THE DEFENDANT:**  Yes, sir.

25         **THE COURT:**  And the Government would have to prove

1   that you knew that this crime was being committed and that you

2   participated in it as if it was something you wanted to bring

3   about.

4           **THE DEFENDANT:**  Yes, sir.

5           **THE COURT:**  All right.  Let's talk about punishments.

6   The punishment for Count Three has a maximum possible

7   punishment of ten years, a maximum fine of $250,000 and a

8   period of supervision of your behavior of not more than three

9   years with a period of revocation of two years and a mandatory

10  100-dollar special assessment.

11          Is this one of those statutes for which Congress has

12  recently amended the law?  It is but this would have occurred

13  before it.  So we don't have to worry about that.

14          And on the occasion of your sentencing, I will

15  calculate and consider the advisory guidelines of the United

16  States Sentencing Commission together with all the other

17  sentencing factors of Title 18, Section 3553 and any departures

18  from them.

19          Have you spoken to your attorney about how these

20  guidelines will be calculated?

21          **THE DEFENDANT:**  Yes, sir.

22          **THE COURT:**  Do you understand them?

23          **THE DEFENDANT:**  Yes, sir.

24          **THE COURT:**  Okay.  Well, they can be a bit confusing.

25  One thing you need to know is these guidelines are advisory.

1   They're not mandatory.  I don't have to impose a guideline

2   sentence and if I do, well, I do.  If I don't, well, I don't.

3   I will consider all of the sentencing factors and the advisory

4   guidelines are one of those sentencing factors.  They play an

5   important role in your sentencing and, therefore, you should

6   understand them.

7           Did your attorney show you a chart of how --

8           **MR. FUGATE:**  Judge, in this case, it's kind of --

9   it's a different situation because the sentencing guidelines

10  might not come into play because they're going to be past the

11  statutory maximum in this case and we talked about that.

12          **THE COURT:**  Okay.  Well, if the sentencing guidelines

13  are beyond the statutory maximum, well, then the maximum

14  possible punishment is ten years.  And that's the maximum.

15          **MR. FUGATE:**  And we've talked about that.

16          **THE COURT:**  Okay.

17          **MR. FISHMAN:**  Your Honor, as to Count Two, the

18  maximum punishment is ten years.  As to Count One, the maximum

19  punishment if five years.

20          **THE COURT:**  Five years, right.  I haven't quite

21  gotten to that yet but --

22          **MR. FISHMAN:**  To Count Three.

23          **THE COURT:**  Okay.  Count Three is ten years.  Count

24  One is five years maximum.  They can be served.  They can --

25  the Court has the authority to stack those cases.  So that

1 would be ten plus five is fifteen.

2         **MR. SPEAKER:**  We talked about that, yes.

3         **THE COURT:**  The sentencing guidelines probably don't

4 speak to that with respect to this case.  I don't know whether

5 they do or not but they can be served consecutively and you

6 need to know what the maximum possible punishment is.

7         Now, with respect to Count One, the maximum possible

8 punishment is a period of five years.  The maximum possible

9 punishment is a 250,000-dollar fine, 100-dollar special

10 assessment and a period of supervision of your behavior not

11 more than three years and you can be required to serve a two-

12 year term of revocation if you violate the terms and conditions

13 of your supervision.  In other words, you can be returned to

14 the penitentiary to serve additional sentences of up to ten --

15 up to two years.

16         Is restitution available?

17         **MR. FISHMAN:**  Restitution is available, your Honor.

18 I don't believe it's mandatory under the statute.  However,

19 there are a number of injuries suffered by the victim including

20 he withdrew from his university as a result of this which may

21 not be able to be calculated in terms of a precise restitution

22 amount.  He had a number of medical bills that he is not

23 covered with insurance as a result of that.  So there is some

24 degree of restitution in this case that we would seek if the --

25         **THE COURT:**  So --

1        **MR. FISHMAN:**  -- Defendant has the ability to pay.

2        **THE COURT:**  I have the power to impose additional

3   financial requirements that you reimburse the Defendant for

4   injuries that he suffered -- I mean, the victim for injuries

5   that he suffered.  Do you understand that?

6        **THE DEFENDANT:**  Yes, sir.

7        **THE COURT:**  That can include medical bills, loss of

8   wages, loss of earnings, other expenditures that are caused by

9   that.  Do you understand?

10       **THE DEFENDANT:**  Yes, sir.

11       **THE COURT:**  And the parties are satisfied with the

12  Court's description of what the Government must prove?

13       **MR. FISHMAN:**  Yes, your Honor.

14       **MR. FUGATE:**  Yes, your Honor.

15       **THE COURT:**  All right.  The Court is satisfied the

16  Defendant understand the charge and the consequences of the

17  plea.

18       Has anyone threatened you or forced you to plead

19  guilty?

20       **THE DEFENDANT:**  No, sir.

21       **THE COURT:**  Has anyone promised you leniency if you

22  would plead guilty?

23       **MR. FUGATE:**  You need to speak --

24       **THE COURT:**  Who makes the decision --

25       **MR. FUGATE:**  I told him to speak up.  I couldn't hear

1    him.

2              THE COURT:  Okay.  Who makes the decision for you to

3    plead guilty?

4              THE DEFENDANT:  I do.

5              THE COURT:  Why are you pleading guilty?

6              THE DEFENDANT:  Because I'm guilty, sir.

7              THE COURT:  Is there a plea agreement?

8              MR. FISHMAN:  Yes, your Honor.

9              THE COURT:  I think the plea agreement should be in

10   front of you.

11             MR. FISHMAN:  It's right here.

12             THE COURT:  And the top of it should say something

13   like, "Memorandum of Plea Agreement."  Have you read that

14   document?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Have you discussed it with your attorney?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Do you understand it?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Did you sign it?

21             THE DEFENDANT:  Yes, sir, I did.

22             THE COURT:  May I see it?  Whichever one is the filed

23   copy -- to be the filed copy.

24             MR. FISHMAN:  This is the signed copy.

25             THE COURT:  All right.  Is this your copy -- is this

1  your signature, sir, up at the top?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  This is an agreement that you have

4  reached with the United States Attorney's office.  You don't

5  have any agreement with me.  In return for your plea of guilty

6  to Counts One and Three, the Government is going to dismiss the

7  other counts in the indictment.

8          Now, with respect to Count Three, I understand from

9  earlier discussions that certain language was to be omitted.

10         MR. FISHMAN:  Yes, your Honor.  We would orally amend

11 the indictment for the purpose of this plea agreement to strike

12 the enhancing languages that's contained in Count Three, that

13 being aggravated sexual assault and kidnapping.

14         THE COURT:  So we would delete the words, "Which

15 offense included aggravated sexual assault and kidnapping"?

16         MR. FISHMAN:  Yes, your Honor.

17         THE COURT:  Okay.  So you will not be required to

18 enter a plea of guilty or not guilty to that because for

19 purposes of the proceeding, if you plead guilty to Count Three

20 omitting those words, then that satisfies the plea agreement.

21 Do you understand?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  And that's -- by omitting that language,

24 that's what permits the punishment to be reduced to a cap of

25 ten years.  If you were required to plead to the words, "Which

offense included the aggravated sexual assault and kidnapping,"
the offense can last as a maximum possible punishment as much
as life in the penitentiary.  Do you understand?

          **THE DEFENDANT:**  Yes, sir.

          **THE COURT:**  I don't see that agreement here in
writing but it's on the record and I want to make certain that
I have correctly stated my understanding of what the parties
intend to do.

          **MR. FUGATE:**  That's my understanding of the
agreement.  That language was going to be --

          **THE COURT:**  Okay.

          **MR. FUGATE:**  -- deleted and we're not pleading to
those elements.

          **MR. FISHMAN:**  Yes, your Honor, and just in terms of
the technicality, we would dismiss that language for the
purpose of this hearing until the acceptance of a plea and the
parties agree that if for whatever reason, the plea was not
accepted that that language would continue -- would revert back
to the indictment should this case go to trial.

          **THE COURT:**  Do you understand what he just said?

          **THE DEFENDANT:**  Yes, sir.

          **THE COURT:**  In other words, if the plea doesn't go
through, if you wanted to withdraw your plea later and I permit
it, then this language comes back into play and you're facing
the maximum possible punishment of life in the penitentiary.

1          **THE DEFENDANT:**  Yes, sir.

2          **THE COURT:**  I see also that you're being recommended

3    for maximum credit for acceptance of responsibility.  And I

4    would presume that whatever that means, you should need to know

5    that I am not required to impose any sentence, certainly not

6    greater than the statutory maximum but you have no promises

7    from me what your sentence will be nor how I will calculate the

8    guidelines or any portion of it and if you're unhappy with your

9    sentence, you can't take back your plea of guilty.  Do you

10   understand?

11         **THE DEFENDANT:**  Yes, sir.

12         **THE COURT:**  There's also a provision for your -- some

13   consideration on the part of the Court if the Government makes

14   a request for me to do so by your giving substantial assistance

15   to the Government in the prosecution of other persons involved

16   in this crime or perhaps even other persons involved in other

17   crimes.  Do you understand?

18         **THE DEFENDANT:**  Yes, sir.

19         **THE COURT:**  That would be up to the Government to

20   request.  Do you understand that?

21         **THE DEFENDANT:**  Yes, sir.

22         **THE COURT:**  At Page 3, Paragraph 7, you're giving up

23   your right to appeal your conviction and the sentence that the

24   Court imposes.  You're also giving up your right to file a 2255

25   petition which Defendants use when the case becomes final to

1   ask the Court to look at the case again and see whether or not

2   the conviction can be vacated.  That's called a "collateral

3   attack."  But you're giving up that right as well to file a

4   2255 petition.  Did you know that you were giving up the right

5   to file your appeal of your conviction or sentence?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  Did you know you were giving up your

8   right to file a 2255 petition?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  And do you want to give those up?

11           THE DEFENDANT:  Yes, sir.

12           MR. FUGATE:  He can still file if there's ineffective

13  assistance of counsel, Judge.  I think that's in the provision

14  in there.

15           THE COURT:  Very well.

16           Has anyone promised you what your sentence would be?

17           THE DEFENDANT:  No -- no, sir.

18           THE COURT:  Do you understand you have no promises

19  from me that -- of what your sentence --

20           THE DEFENDANT:  Yes, sir, I understand.

21           THE COURT:  -- and if -- and as a result, you can't

22  ask to get your case back before a jury because you don't get

23  the sentence that you hoped to receive.  Do you understand?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  I find the plea is voluntary.  You may

1    arraign the Defendant.  The custom in this court is for you to

2    read the charge.

3              **MR. FISHMAN:**  Yes, your Honor.

4              **THE COURT:**  Read all of Count One.

5              **MR. FISHMAN:**  "Count One, 18 U.S.C., Section 371,

6              that on or about March 8th, 2012 in Corpus Christi,

7              Texas in the Southern District of Texas, Defendant

8              Ramiro Serrata, Jr., knowingly and willfully

9              combined, conspired and agreed with others" -- as the

10             indictment reads, "with one another" because he's

11             indicted with Mr. Garza -- "and persons unknown to

12             the Government to commit offenses against the United

13             States of America, to wit, hate crimes in violations

14             of 18 U.S.C., Section 249(a)(1) and 18 U.S.C.,

15             Section 249(a)(2).

16             The object of the conspiracy.  It was the plan or

17             purpose of this conspiracy to assault KG, a gay black

18             man, because of his race, color and sexual

19             orientation.

20             Overt act.  In furtherance of the conspiracy and to

21             accomplish the objects thereof, the conspirators

22             committed and caused to be committed the following

23             overt acts among others within the Southern District

24             of Texas.  The conspirators invited KG into an

25             apartment located at 1339 Tenth Street, Apartment C

1  in Corpus Christi, Texas.

2  Defendant Garza punched KG and said something to the

3  effect of, 'We don't like niggers around here and we

4  especially don't like faggot niggers.'  Over the

5  course of approximately three hours, the conspirators

6  assaulted KG with dangerous weapons including, among

7  other things, a handgun, a broom or mop, a frying

8  pan, a coffee mug, a spatula, a belt and a chair.

9  The conspirators also assaulted KG with their hands

10  and feet.

11  During the assault, the conspirators poured a

12  household cleaning agent or chemical solution onto

13  KG's face and eyes.  When KG began bleeding, the

14  conspirators forced KG to remove all his clothing and

15  clean the bloody apartment.  After KG was completely

16  naked, the conspirators sodomized KG using a broom or

17  mop and an unknown object.  The conspirators forced

18  KB to such on the end of the broom or mop that had

19  been used to sodomize him.  The conspirators whipped

20  KG with a belt.  The conspirators forced KG to drink

21  urine.

22  Throughout the assault, the conspirators prevented KG

23  from leaving the apartment by physical force and

24  threats of force.  KG eventually escaped the

25  apartment by jumping out of a window.  Throughout the

1       assault, the conspirators repeatedly called KG

2       anti-black and anti-gay slurs such as, but not

3       limited to, 'faggot' and 'nigger' and made other

4       anti-black and anti-gay statements all in violation

5       of Title 18, United States Code, Section 371.

6       Count Three, 18 U.S.C., Section 249, Section (a)(2)

7       and 18 United States Code, Section 2.  On or about

8       March 8th, 2012 in Corpus Christi, Texas in the

9       Southern District of Texas, Ramiro Serrata, Jr.,

10      aided and abetted by others and by Jimmy Garza, Jr.

11      did willfully cause bodily injury to KG by assaulting

12      KG, including by sodomizing KG with multiple objects

13      because of KG's actual and perceived sexual

14      orientation, namely that his is gay, which offense

15      included aggravated" -- that language has been

16      stricken pursuant to this plea.

17      "Now, in connection with the offense, the Defendants

18      used weapons that traveled in interstate commerce.

19      Defendants interfered with commercial and other

20      economic activity in which the victim was engaged at

21      the time of the conduct and which offense otherwise

22      affected interstate or foreign commerce all in

23      violation of Title 18, United States Code, Section

24      249(a)(2) and 2."

25      **THE COURT:**  How do you plead to Count Number One,

1  sir?

2          **THE DEFENDANT:** Guilty, sir.

3          **THE COURT:** And how do you plead to Count Number

4  Three?

5          **THE DEFENDANT:** Guilty, sir.

6          **THE COURT:** What are the facts?

7          **MR. FISHMAN:** Your Honor, on March 8th, 2012,

8  Defendant Ramiro Serrata, Jr., along with co-conspirator Jimmy

9  Garza, Jr., acting together and with others in Corpus Christi,

10  Texas within the Southern District of Texas, assaulted KG.  KG

11  is a gay black man.  During the assault, Serrata and Garza and

12  other co-conspirators hit and kicked KG and struck him with

13  numerous items, including a mug, a sock filled with batteries,

14  a frying pan, a belt and a broom as well as other items.  Garza

15  also struck KG in the head with a handgun.

16          When KG began bleeding from the assaults, Garza

17  forced KG to remove his clothing and clean the bloody

18  apartment.  While KG was naked, Garza pointed a gun at KG and

19  the co-conspirators forced KG to bend over and Serrata forced a

20  broomstick up KG's anus.  Serrata sodomized KG because he is

21  gay.  The handgun and broom had traveled in interstate

22  commerce.  Throughout the assault, the co-conspirators called

23  KG "gay" and called him anti-gay slurs such as "faggot."

24          During the assault, the conspirators whipped KG on

25  his back multiple times with a belt and a broomstick while

1   calling KG a "nigger," a "slave" and other racial slurs.  Garza

2   also poured bleach into KG's eyes and all over his body.  The

3   assault caused serious bodily injury to KG.

4           **THE COURT:**  Is that what happened in your case?

5           **THE DEFENDANT:**  Yes, sir.

6           **THE COURT:**  Is that what you did?

7           **THE DEFENDANT:**  Yes, sir.

8           **THE COURT:**  What day did this happen?

9           **THE DEFENDANT:**  March the 8th.

10          **THE COURT:**  Where did it happen?

11          **THE DEFENDANT:**  At a house on Elizabeth Street and

12  Tenth.

13          **THE COURT:**  Whose house?

14          **THE DEFENDANT:**  It was rented in my name, sir.

15          **THE COURT:**  Did you live there?

16          **THE DEFENDANT:**  Yes, sir.

17          **THE COURT:**  Why was KG in your house?

18          **THE DEFENDANT:**  To buy drugs, sir.

19          **THE COURT:**  I'm sorry?

20          **THE DEFENDANT:**  To buy drugs, sir.

21          **THE COURT:**  Okay.  And did he come in the house?

22          **THE DEFENDANT:**  Yes, sir.

23          **THE COURT:**  And when he was in the house, what did

24  you do to him?

25          **THE DEFENDANT:**  I helped what happened.

1          **THE COURT:**  What happened?

2          **THE DEFENDANT:**  I mean, everything that was read,

3    sir, happened, sir.

4          **THE COURT:**  I'm sorry?

5          **THE DEFENDANT:**  Everything that was read happened,

6    sir.

7          **THE COURT:**  Why did you do that?

8          **THE DEFENDANT:**  I was -- I mean, I don't know, sir.

9    I wasn't in a right state of mind.  I mean, I just -- just -- I

10   don't know -- heat of the moment, sir.

11         **THE COURT:**  Well, was he called names?

12         **THE DEFENDANT:**  Yes, sir.

13         **THE COURT:**  What names was he called?

14         **THE DEFENDANT:**  Everything that was read, sir,

15   "faggot," "nigger," "slave," everything, sir.

16         **THE COURT:**  Why?

17         **THE DEFENDANT:**  Because of his race, I guess.

18         **THE COURT:**  Why was he called "faggot"?

19         **THE DEFENDANT:**  He seemed to be gay.

20         **THE COURT:**  Did you find that offensive?

21         **THE DEFENDANT:**  Not really, sir, but yeah.

22         **THE COURT:**  Did you assault him because he was gay?

23         **THE DEFENDANT:**  Yes, sir.

24         **THE COURT:**  Did you assault him because he was black?

25         **THE DEFENDANT:**  Yes, sir.

1          THE COURT:  And did you and Garza and others do that

2   together?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  And did you speak of that before he came

5   into the house?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  How is it that it got started that that's

8   what would happen?

9          THE DEFENDANT:  I believe he owed money.

10         THE COURT:  He owed money?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Do you agree that the Government could

13  prove that the firearm was used by one of the assaulters?

14         THE DEFENDANT:  I don't know how to answer that

15  question, sir.  I don't know.

16         THE COURT:  I mean, do you agree that they could

17  prove it or not?

18         THE DEFENDANT:  I believe so.

19         THE COURT:  And who used the firearm?

20         THE DEFENDANT:  Jimmy Garza.

21         THE COURT:  Did you see that happen?

22         THE DEFENDANT:  Yeah.  Yes, sir.

23         THE COURT:  And what did he do with the firearm?

24         THE DEFENDANT:  Pistol whipped him.

25         THE COURT:  Were you present?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And was that part of the beating that

3    everybody was administering?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Where was the firearm manufactured?

6          MR. FISHMAN:  Your Honor, we do not know where the

7    firearm was manufactured.

8          THE COURT:  What kind of firearm is it?

9          MR. FISHMAN:  It's been described as a handgun.

10         THE COURT:  You've never seen the firearm?

11         MR. FISHMAN:  No, your Honor.

12         THE COURT:  How do you know it traveled in interstate

13   commerce?

14         MR. FISHMAN:  That was our understanding based on our

15   conversations with the Defendant.

16         THE COURT:  What kind of firearm was it?

17         THE DEFENDANT:  I don't know, sir.  I never held it.

18   It was between a Glock 40 or 9 mm.

19         THE COURT:  Did you see it?

20         THE DEFENDANT:  I seen it.  It was a silver color.

21         THE COURT:  Do you know what caliber it was?

22         THE DEFENDANT:  No, sir.

23         THE COURT:  Do you know what manufacturer it was?

24         THE DEFENDANT:  No, sir.

25         THE COURT:  Had you ever held it?

1          **THE DEFENDANT:**  No, sir.

2          **THE COURT:**  What happened to the firearm?

3          **THE DEFENDANT:**  I don't know, sir.

4          **THE COURT:**  The Government must prove that this

5     matter -- that the firearm traveled in interstate commerce or

6     somehow affected interstate commerce and so you are accepting

7     that the Government could prove that.  That is something that

8     the Government must prove or that the broom traveled in

9     interstate commerce or otherwise, there was an effect on

10    commercial activities that the victim was engaged in at the

11    time of the offense or the offense otherwise affected

12    interstate or foreign commerce.  Those are matters that the

13    Government must prove.

14         Do you believe the Government can prove those

15    matters?

16         **THE DEFENDANT:**  Yes, sir.

17         **THE COURT:**  How would the Government prove an

18    interference with commercial activities?

19         **MR. FISHMAN:**  The victim was engaged in the purchase

20    of illegal narcotics at the time.

21         **THE COURT:**  How would you prove that the offense

22    otherwise affected interstate or foreign commerce?

23         **MR. FISHMAN:**  As a result of this particular assault,

24    that location having been used for the sale of commercial

25    drugs, was permanently closed down.

1          **THE COURT:**  The broom was manufactured in Mexico?

2          **MR. FISHMAN:**  Yes, your Honor.

3          **THE COURT:**  How is that interstate commerce?

4          **MR. FISHMAN:**  It was manufactured in Mexico and

5    traveled in interstate and foreign commerce to get into Texas

6    using a company based out of New Jersey facilitating the

7    transport of that broom into Texas.

8          **THE COURT:**  I take it there were more people other

9    than you and Garza?

10          **THE DEFENDANT:**  Yes, sir.

11          **THE COURT:**  How many more?

12          **THE DEFENDANT:**  Two.

13          **THE COURT:**  Why were you screaming or yelling at him

14    racial names?

15          **MR. FUGATE:**  Judge, I think that was not my client

16    making the -- that was part of the conspiracy but it was other

17    Co-defendants that were doing that.

18          **THE COURT:**  Did you yell racial names at him?

19          **THE DEFENDANT:**  No, sir.

20          **THE COURT:**  Did other people?

21          **THE DEFENDANT:**  Sir?

22          **THE COURT:**  Did others?

23          **THE DEFENDANT:**  Yes, sir.

24          **THE COURT:**  And what were you doing while they did

25    that?

1          **THE DEFENDANT:**  Just aiding them, sir.

2          **THE COURT:**  How so?

3          **THE DEFENDANT:**  By physical force.

4          **THE COURT:**  Were other people yelling that he was

5    gay?

6          **THE DEFENDANT:**  Yes, sir.

7          **THE COURT:**  Were you?

8          **THE DEFENDANT:**  No, sir.  I didn't find out he was

9    gay until after the fact that it was happening.

10          **THE COURT:**  I'm sorry?

11          **THE DEFENDANT:**  I didn't find out he was gay until

12    after the fact the assault was happening.

13          **THE COURT:**  Well, it's alleged that you inserted a

14    broom in his rear end; is that true?

15          **THE DEFENDANT:**  Yes, sir.

16          **THE COURT:**  Why did you do that?

17          **THE DEFENDANT:**  I have no idea, sir.

18          **THE COURT:**  And when did you first believe he was

19    gay?

20          **THE DEFENDANT:**  After I heard he was during the

21    assault.

22          **THE COURT:**  During the assault?

23          **THE DEFENDANT:**  Yes, sir.

24          **MR. FUGATE:**  Judge, at the time that he committed the

25    -- or sodomized this man, he knew that he was gay and he's

1   already debriefed and he's given agents that story and that's

2   the truth.  He was well aware that the man was gay and that's

3   why he did it.

4           Also, Judge, on the weapon, I know it's somewhat of a

5   stretch but I would suspect that an expert from ATF could come

6   into court and testify based on the description of that weapon

7   that it could not have been manufactured in Texas, based on my

8   experience of what I've seen.

9           **THE COURT:**  Well, there are pistol manufacturers in

10  Texas.

11          **MR. FUGATE:**  I understand that.

12          **THE COURT:**  I mean, they may not be large but I'm

13  sure people in Texas can manufacture weapons.  I don't know.

14          Well, if the parties want me to enter a finding of

15  guilty, I will.  Anything further from the parties before I do?

16          **MR. FISHMAN:**  No, your Honor.

17          **MR. FUGATE:**  No, your Honor.

18          **THE COURT:**  The Court enters a finding of guilty on

19  Counts One and Three.  Sentencing is set for?

20          **THE CLERK:**  December the 9th at 10:00 a.m.

21          **THE COURT:**  Sentencing is set for the date announced

22  by the clerk.  A presentence investigation is ordered.

23  Defendant is remanded.

24          **MR. FUGATE:**  Judge, one request.  He's in custody.

25  Is there any possible way we could get him back to Corpus

1    Christi or Robstown?  He's in Brooks County right now and it's

2    a -- his family lives in Robstown and it's easier for me to

3    come over here.

4            **THE COURT:**  Why is it easier for you to come this way

5    than it is to go that way?

6            **MR. FUGATE:**  Because I have more business over here

7    and it's -- when I'm coming this way, I can double up.

8            **THE COURT:**  Right.

9            Does Government intend to call this Defendant

10   Mr. Serrata as a witness?

11           **MR. FISHMAN:**  Not potentially, your Honor.

12           **THE COURT:**  Is there an agreement to do so and

13   provide evidence?

14           **MR. FUGATE:**  That's correct, Judge.  We're prepared

15   to do so.

16           **THE COURT:**  Is that true?

17           **THE DEFENDANT:**  Yes, sir.

18           **THE COURT:**  I'll see what I can do about that.

19           **MR. FUGATE:**  Thank you, Judge.

20           **THE DEFENDANT:**  Thank you, Judge.

21           **THE COURT:**  You're excused.

22        **(This proceeding adjourned at 11:43 a.m.)**

23

24

25

CERTIFICATION


I certify that the foregoing is a correct transcript from the

electronic sound recording of the proceedings in the above-

entitled matter.




_____          May 3, 2016_


                TONI HUDSON, TRANSCRIBER